**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVAN CORNEJO, | No. C 09-05564 MHP |
| Plaintiff, | |
| v. | **MEMORANDUM & ORDER** |
| SPENGER'S FRESH FISH GROTTO, McCORMICK AND SCHMICK RESTAURANT CORP., and DOES 1-10 | **Re: Defendant McCormick and Schmick's Motion to Compel Arbitration** |
| Defendants. / | |

Ivan Cornejo ("Cornejo") filed this action against his former employer, Spenger's Fresh Fish Grotto ("Spenger's"), and Spenger's parent company, McCormick and Schmick Restaurant Corp. ("M & S"), alleging a hostile work environment on the basis of race, national origin and disability in violation of the Fair Housing and Employment Act (FEHA), Cal. Gov't Code § 12940, disability discrimination, *id.*, failure to reasonably accommodate a disability, *id.*, unlawful retaliation for engaging in protected conduct, *id.* wrongful termination in violation of public policy and intentional infliction of emotional distress. Docket No. 1 (Notice of Removal), Exh. A (Compl.) ¶¶ 27-72. Before the court is M & S's motion to compel arbitration pursuant to an arbitration agreement it contends that Cornejo entered into in 2006. Having considered the parties' arguments and submissions and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND

Cornejo, a Hispanic, worked as a busboy at Spenger's for two separate periods of time—first from July 10, 2004, to April 24, 2006, and then again from June 15, 2006, until his termination on April 30, 2009. Cornejo alleges that during 2008 and 2009, Spenger's managers and other employees harassed him because of his race, that Spenger's managers failed to accommodate his end stage renal disease by refusing to modify his schedule to permit thrice-weekly dialysis, and that his managers retaliated against him when he complained to the California Department of Fair Employment and Housing (DFEH) about his allegedly discriminatory working environment. Compl. ¶¶ 8-26.

Cornejo filed suit in the Superior Court for the County of Alameda on October 22, 2009. *Id.* at 1. On November 24, 2009, M & S removed the case to this court on the basis of diversity jurisdiction pursuant to 28 U.S.C. section 1332. *See* Notice of Removal at 3-4. On January 27, 2010, M & S filed the instant motion to compel arbitration. Docket No. 8.

In support of its motion to compel arbitration, M & S submitted a copy of an Agreement to Arbitrate Disputes ("Arbitration Agreement" or "Agreement") that it contends Cornejo signed. Exhibit A to the Declaration of Patti Brown is an unsigned English-language version of the Agreement; Exhibit B to that same declaration is a signed Spanish-language document, entitled "Acuerdo de Arbitraje," which is the Spanish translation of the Arbitration Agreement. Docket. No. 10 (Brown Dec.), Exh. A (Arbitration Agreement) & B (Acuerdo de Arbitraje); *see* Docket. No. 11 (Snyder Dec.) ¶¶ 3-5 (declaring that he personally translated the Agreement to Arbitrate Disputes into Spanish, and that the documents submitted by M & S are the English-language version of the Agreement that he translated and the translation that he produced).

The relevant terms of the Arbitration Agreement are that:

> [T]he Parties agree that all disputes relating to their employment relationship or the termination of that relationship that are not resolved informally (or through conciliation of claims filed before the Equal Employment Opportunity Commission ("EEOC") or a state Fair Employment practices Agency), shall be fully and finally resolved exclusively by binding arbitration as set forth in this Agreement.

2

1  Arbitration Agreement at 1.  Among the types of disputes explicitly embraced by the Arbitration

2  Agreement are

3  all claims under Title VII of the Civil Rights Act of 1964, the Post Civil War Rights Acts (42 §§ 1981-1988), the Equal Pay Act, the Fair Labor Standards Act, the American with Disabilities Act, the Family Medical Leave Act, and all other federal, state, local or other laws including, but not limited to, all common law, contract, statutory and tort claims, and all claims related to wages or compensation, and all claims of employment discrimination.

6  *Id.*  The Arbitration Agreement explains that "[a]ll arbitration proceedings conducted pursuant to

7  this Agreement shall be conducted in accordance with the National Rules for the Resolution of

8  Employment Disputes of the [American Arbitration Association (AAA)] in effect at the time a

9  demand for arbitration is made, or such other rules as may be agreed upon by the Parties." *Id.*

10  Further, the Arbitration Agreement provides for a neutral arbitrator, whose decision "shall be final

11  and binding and is not subject to appeal." *Id.*  All parties involved in any arbitration covered by the

12  Agreement are entitled to representation, at their own expense, and employees are only responsible

13  for any arbitration fees up to the amount they would have paid as a filing fee in the state or federal

14  court in which they otherwise could have filed their case. *Id.*

15  The third page of the Arbitration Agreement is a signature page, providing space for the date

16  and for the signatory to print and sign his name.  The document submitted by M & S is fully

17  completed for Ivan Cornejo, including the printed name, signature and date (June 15, 2006).

18  Acuerdo de Arbitraje at 3.  However, due to differences in handwriting, it is plainly apparent that the

19  document was signed by someone other than the person who filled in the printed name and date.

20  In opposition to the motion to compel arbitration, Cornejo submitted his own declaration,

21  stating that he never entered into any arbitration agreement with M & S and accusing M & S of

22  forging his signature on the Arbitration Agreement.  Docket No. 16 (Cornejo Dec.) ¶ 8.  Cornejo

23  asserts that all of the paperwork that he filled out at the time of his hiring was in English and was

24  translated for him by a manager named Helton (last name unknown).  The critical paragraphs of his

25  declaration are as follows:

26  I have reviewed the Agreement to Arbitrate that Defendant alleges that I signed . . . .  The handwriting on the signature page is not mine.  Somebody else wrote the dates, the restaurant number and my name on the document.  I do not recognize the handwriting.  I do not know why somebody else would write in my name and the date on such a critical document.  I do

28

3

> not believe that the signature on the agreement is mine.  While it resembles my signature, there appear to be breaks on the bottom part of the "C" for Cornejo.  I always sign my "C" in one fluid movement.  There appear to be two breaks on the bottom part of the C as if someone tried to extend the bottom part of the C twice.

*Id.*  Cornejo further asserts that he was never told about or saw any arbitration agreement. *Id.* ("I never saw or reviewed any Agreement to Arbitrate during my employment.  I do not recall ever signing any Agreement to Arbitrate with the Defendant.  I did not know of the existence of an alleged agreement to arbitrate until Defendant's attorney contacted my attorney.  I was never told anything about an agreement to arbitrate by any person during my employment with Defendant.  I was never explained any of the ramifications of arbitration including the waiver of important rights, like the right to a jury trial or the right to pursue my claims in court.  I was never told or explained a single term in the Agreement to Arbitrate. . . . At no point during my employment did my supervisor or manager mention arbitration.").

As would be expected, in its reply to Cornejo's opposition, M & S denied forging Cornejo's signature on the arbitration agreement and submitted a declaration explaining that the two breaks in the "C," about which Cornejo complained, were the product of the electronic scanning process. Docket No. 26 (Castillo Dec.) ¶ 4.  To support this contention, M & S submitted a higher quality scan of the agreement. *Id.*, Exh. A.  M & S also submitted a number of other employment documents that Cornejo allegedly signed in an attempt to establish that the signature on the arbitration agreement is Cornejo's.  *See* Docket No. 25 (Cadwell Dec.), Exh. D. (Voluntary Meal Period Waiver 1) & Exh. E. (Solicitud Para Empleo).  Finally, M & S submitted declarations that describe M & S's hiring procedures in an attempt to establish that Cornejo did, in fact, sign the Arbitration Agreement.  *See* Cadwell Dec. ¶¶ 5-12; Docket No. 24 (Katz Dec.) ¶¶ 1-4.

LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, requires federal courts to enforce arbitration agreements and to stay any litigation that contravenes such agreements.  Arbitration is a matter of contract, and the court cannot require a party to arbitrate a dispute unless the party has agreed to do so.  *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582

4

(1960). Accordingly, the court's role under the FAA is limited to (1) determining whether a valid agreement to arbitrate exists and, if it does, (2) deciding whether the agreement encompasses the dispute at issue. 9 U.S.C. § 4; *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719-20 (9th Cir. 1999). In determining whether an agreement to arbitrate exists, the court must resolve all material issues of disputed fact in favor of the non-movant. *See Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002); *Sandvik AB v. Advent Int'l. Corp.*, 220 F.3d 99, 104 (3d Cir. 2000).

Despite the "liberal federal policy favoring arbitration agreements," *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 81 (2000), state law still has a role to play. In interpreting 9 U.S.C. section 2, the Supreme Court has held that "state law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987) (emphasis in original). Therefore, "generally applicable contract defenses, such as fraud, duress or unconscionability, may be applied to invalidate arbitration agreements without contravening Section 2." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). "In making this determination, federal courts may not address the validity or enforceability of the contract as a whole." *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 937 (9th Cir. 2001) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 (1967)).

DISCUSSION

Cornejo presents two arguments for why this court should not compel him to arbitrate his employment-related claims against M & S. First, Cornejo challenges the authenticity of the arbitration agreement, suggesting that M & S forged his signature on the Arbitration Agreement, and contends that he never entered into any arbitration agreement. Second, Cornejo argues that even if he entered into the arbitration agreement, it is not enforceable under California law. The court addresses each argument in turn.

5

I. <u>Authenticity of Arbitration Agreement</u>

Cornejo contends M & S forged his signature on the Arbitration Agreement. State-law contract defenses, including that one's signature to a contract was forged, can be sufficient to invalidate an arbitration agreement. 9 U.S.C. § 2. The defendant bears the burden of establishing, by a preponderance of the evidence, that a valid agreement to arbitrate exists. *Giuliano v. Inland Empire Personnel, Inc.*, 149 Cal. App. 4th 1276, 1284 (2007). However, as is discussed above, on a motion to compel arbitration, if the court finds that disputes exist regarding material issues of fact, the court must allow a jury to determine whether a valid contract was created.

At the hearing on this motion, the court informed that parties that given the record, the court could not conclude definitively that Cornejo had, in fact, signed the Arbitration Agreement. Rather than try the issue of the authenticity of Cornejo's signature before a jury, the parties agreed, at the court's suggestion, to jointly retain an expert to determine whether Cornejo did, in fact, sign the Agreement. The court ordered the parties to resolve the signature issue within 45 days. Docket No. 28 (Minute Entry from Motion Hearing). After receiving an extension of time from the court, on May 5, 2010, the parties submitted a joint status report regarding the signature analysis on the arbitration agreement. The statement explained that the parties had jointly retained Martha Blake ("Blake"), a forensic document examiner, "to examine and analyze the disputed signature on the Arbitration Agreement in question." Docket No. 34 (Joint Statement re: Signature) at 1. The parties also attached to the statement Blake's forensic report. *Id.*, Exh. A (Forensic Report). In her report, Blake explained her methodology, which involved comparing the disputed signature to admittedly authentic samples of Cornejo's signature. *Id.* at 1. After conducting the comparison, Blake concluded that the signature on the Arbitration Agreement was Cornejo's signature. *Id.* at 2. Cornejo now concedes that his signature on the Arbitration Agreement is authentic. *See* Docket No. 36 (Aguilar Dec.) (explaining failure to appear for May 10, 2010 status report was because of belief that Blake's report settled the issue of the authenticity of Cornejo's signature). As the parties now agree that Cornejo's signature on the Agreement is authentic, the court proceeds to Cornejo's sole remaining objection to the enforcement of the Agreement—the enforceability of the Agreement.

6

II. Enforceability of the Arbitration Agreement

Cornejo presents two separate arguments in favor of unenforceability: (1) that the Arbitration Agreement does not meet the legal requirements set forth in *Armendariz v. Foundation Health Psychcare Services*, 24 Cal. 4th 83 (2000), for agreements to arbitrate that encompass claims under FEHA, and (2) that the Arbitration Agreement is unconscionable. The court addresses each in turn.

A. California's Requirements for Arbitration of FEHA Claims

In *Armendariz*, the California Supreme Court held that "an arbitration agreement cannot be made to serve as a vehicle for the waiver of statutory rights created by the FEHA." *Id.* at 101. Accordingly, the court held that arbitration agreements that encompass FEHA claims are permitted so long as those agreements allow employees to vindicate all of the rights to which they are entitled under FEHA. The court identified five rights that must be available to an employee under an arbitration agreement: (1) no limitation of remedies, (2) adequate discovery, (3) a written arbitration award and judicial review, (4) no unreasonable costs or arbitration fees placed upon the employee, and (5) a neutral arbitrator. *Id.* at 103-10.

Cornejo contends that the Arbitration Agreement at issue is legally deficient because it does not provide for a written decision from the arbitrator or for any form of judicial review. The Agreement states that the decision of the arbitrator "shall be final and binding and is not subject to appeal." Arbitration Agreement. It does not, on its face, provide that the decision of the arbitrator must be in writing or that a party has a right to seek judicial review of the arbitration award. Neither of these facial defects, however, prove fatal.

Firstly, with respect to the written decision requirement, the Agreement specifically incorporates the National Rules for the Resolution of Employment Disputes of the AAA. Rule 39(c) of the Rules in effect as of November 2009, the date M & S sought to compel arbitration, states that "[t]he [arbitration] award shall be in writing and . . . and shall provide the written reasons for the award unless the parties agree otherwise." *See* Employment Arbitration Rules and Mediation Procedures, *available at* http://www.adr.org/sp.asp?id=32904 (web-version of the Rules in effect from November 1, 2009 to present). Thus, by adopting the National Rules for the Rules of

Employment Disputes, the Arbitration Agreement, by incorporation, provides for a written decision in accordance with *Armendariz*.

Secondly, with respect to judicial review, Cornejo misapprehends the extent of judicial review required by *Armendariz*. "[I]n order for . . . judicial review to be successfully accomplished, an arbitrator in a FEHA case must [only] issue a written arbitration decision that will reveal, however briefly, the essential findings and conclusions on which the award is based." *Armendariz*, 24 Cal. 4th at 107. Judicial review of arbitration decisions is circumscribed by California Code of Civil Procedure section 1286.2, which allows a reviewing court to vacate an arbitrator's award only in the instance of certain types of procedural unfairness in the arbitration proceedings. Cal. Civ. Code § 1286.2.[1] Although parties can contract for expanded judicial review of arbitration awards, including review of the merits of an arbitrator's decision, *see Cable Connection, Inc. v. DIRECTV, Inc.*, 44 Cal.4th 1334, 1364 (2008), *Armendariz* does not provide for or require such judicial review in cases arising under FEHA. With this in mind, the Arbitration Agreement satisfies *Armendariz* because, while it permits no review of the arbitrator's substantive rulings, it does not foreclose the review available to an employee under Civil Code section 1286.2.

### B. Unconscionability

Under California law, an arbitration agreement that is both procedurally and substantively unconscionable must be invalidated. *Armendariz*, 24 Cal. 4th at 114; *see also Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101, 1105 (9th Cir.2003). A sliding scale is used to assess procedural unconscionability in proportion to substantive unconscionability: "The more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz*, 24 Cal. 4th at 114.

#### 1. Procedural Unconscionability

The court examines two factors when examining the procedural unconscionability of a contract: oppression and surprise. *Id.* "Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice," while "[s]urprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by

8

the party seeking to enforce them." *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001). Cornejo suggests that the Arbitration Agreement was both oppressive and the product of surprise.

A contract of adhesion is one where a standardized contract has been drafted by the party with stronger bargaining power, and the weaker party has no choice other than to take it or leave it. *Neal v. State Farm Ins. Cos.*, 188 Cal. App. 2d 690, 694 (1961). M & S concedes that the Arbitration Agreement was a contract of adhesion. Employees were required to sign the Agreement as a condition of employment with the company and were provided with no opportunity to negotiate any of the terms. As there was no give and take and M & S was incontrovertibly the stronger party, the Arbitration Agreement was a quintessential contract of adhesion. This fact alone, however, fails to render the arbitration provision unenforceable. Adhesion contracts are "a familiar part of the modern legal landscape . . . They are also an inevitable fact of life for all citizens—businessman and consumer alike." *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 817-18 (1981). Because of the inevitability that one contracting party almost always has a superior bargaining position, other factors need to be present to render an adhesion contract unenforceable. *24 Hour Fitness, Inc. v. Superior Court*, 66 Cal. App. 4th 1199, 1213 (1998) (holding that arbitration agreement is not unconscionable absent a showing that it was "unduly harsh, oppressive or one-sided"). Cornejo has not argued that any other factors are present in this case.

Cornejo's claim of surprise carries less, if any, weight. The Arbitration Agreement was a stand alone, clearly labeled document, that should have provided Cornejo with the necessary procedural notice regarding the waivers it contained. Cornejo's signature on the Spanish-language version of the Agreement serves as sufficient evidence that he was provided with an opportunity to review the Agreement, notwithstanding Cornejo's protestations to the contrary. The fact that a contract term is not read or understood by the adhering party does authorize a court to refuse to enforce the contract. *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (1982).

The court holds that the Arbitration Agreement, as an adhesion contract, possessed some, but not a substantial, degree of procedural unconscionability.

### 2. Substantive Unconscionability

Given that the Arbitration Agreement is only somewhat procedurally unconscionable, to establish that the Agreement should be invalidated, Cornejo must demonstrate that the terms of the Agreement are substantively unconscionable to a significant degree. He cannot do so.

The California Supreme Court has cautioned that because of "the lack of choice and the potential disadvantages that even a fair arbitration system can harbor for employees, [courts] must be particularly attuned to claims that employers with superior bargaining power have imposed one-sided, substantively unconscionable terms as part of an arbitration agreement." *Armendariz*, 24 Cal. 4th at 115. That said, an arbitration agreement is only substantively unconscionable if it fails to satisfy any of the five *Armendariz* requirements discussed above or if the agreement is unfairly tilted in favor of the employer. The court has already held that the Arbitration Agreement at issue satisfies the five *Aremendariz* requirements. Further, the terms of the agreement provide for the "modicum of bilaterality," compelled by *Armendariz*, to ensure a level of equality between the contracting parties. *See id.* at 117. Unlike in instances where courts have found arbitration agreements unconscionable, the instant Arbitration Agreement mandates that *all* disputes relating to the employment relationship between Cornejo and M & S be submitted to arbitration, regardless of which party institutes the proceedings. Arbitration Agreement ("[A]ll disputes relating to the[] employment relationship or the termination of that relationship . . . shall be fully and finally resolved exclusively by binding arbitration as set forth in this Agreement."); *see Armendariz*, 24 Cal. 4th at 117-18. Although the Agreement signed by Cornejo certainly requires that any actions he might have against M & S be submitted to arbitration, Cornejo has not identified any terms of the Agreement whereby M & S could avoid arbitrating any claims it may elect to prosecute against Cornejo. As a result, the Arbitration Agreement has more than a "modicum of bilaterality"; it is fully bilateral.

Accordingly, the court holds that the Arbitration Agreement is not substantively unconscionable. Therefore, even though the Agreement represents a paradigmatic contract of adhesion (and thus some level of procedural unconscionability), Cornejo cannot demonstrate that the

10

contract was *both* procedurally and substantively unconscionable. As a result, the Agreement is not unconscionable.

CONCLUSION

The Arbitration Agreement is valid and encompasses the dispute at issue in this action. Accordingly, defendants' motion to compel arbitration is GRANTED.

IT IS SO ORDERED.

Dated: May 14, 2010

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

**ENDNOTES**

1. Section 1286.2 provides:

a) Subject to Section 1286.4, the court shall vacate the award if the court determines any of the following:

(1) The award was procured by corruption, fraud or other undue means.

(2) There was corruption in any of the arbitrators.

(3) The rights of the party were substantially prejudiced by misconduct of a neutral arbitrator.

(4) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted.

(5) The rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title.

(6) An arbitrator making the award either: (A) failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware; or (B) was subject to disqualification upon grounds specified in Section 1281.91 but failed upon receipt of timely demand to disqualify himself or herself as required by that provision. However, this subdivision does not apply to arbitration proceedings conducted under a collective bargaining agreement between employers and employees or between their respective representatives.

Cal. Civ. Code § 1286.2.